UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

**CAPITAL CASE**

FILED ELECTRONICALLY:

THOMAS CLYDE BOWLING, ET AL.                                    PLAINTIFFS


v.                                              CIVIL ACTION NO. 3:07-cv-00032-KKC


SCOTT HAAS, ET AL                                              DEFENDANTS


**DEFENDANTS' RESPONSE BRIEF ON THE
APPLICATION OF CLAIM PRECLUSION**

___

      Come now the Defendants, by and through counsel, and pursuant to the Court's Order entered March 20, 2008 [Docket # 42], submit the following brief in response to the Plaintiff's Brief [Docket #44] on the application of claim preclusion to the above-styled action.

**I.     FACTUAL BACKGROUND:**

      On January 30, 1992, Plaintiff Ralph Baze shot and killed Powell County Sheriff Steve Bennett and Deputy Sheriff Arthur Briscoe while the officers were attempting to serve five felony fugitive warrants from Ohio on him. Plaintiff Baze ambushed Sheriff Bennett after laying in wait from the cover of a large stump and brush pile near his secluded cabin. He shot Sheriff Bennett three times in the back with an SKS semi-automatic assault rifle, killing the sheriff.  He

exchanged fire with Deputy Briscoe until the Deputy had emptied his weapon. He shot Deputy Briscoe twice in the back as the Deputy attempted to run. Finally, he stood over the fallen Deputy and shot him in the back of the head, killing him. *See* Baze v. Commonwealth, Ky. 965 S.W.2d 817, 819-820 (1997), *cert. denied,* 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 685 (April 20, 1998).

Plaintiff Baze was subsequently convicted of capital murder in the deaths of Sheriff Bennett and Deputy Sheriff Briscoe in Rowan Circuit Court Case No. 93-CR-00001. Baze was then sentenced to death on February 4, 1994.[1] Baze' direct appeals of his conviction and death sentence were exhausted on April 20, 1998, when the United States Supreme Court denied his motion for certiorari to the Kentucky Supreme Court's order entered March 27, 1997 affirming his capital conviction and death sentence.[2] All legitimate state and federal avenues for challenging his guilt for the murders and the appropriateness of his death sentence have been exhausted.[3]

On January 4, 1991, Plaintiff Thomas Bowling was convicted of the intentional murders of Eddie and Tina Earley and for fourth-degree assault for the injury to the Earley's infant son in Fayette Circuit Court Case No. 93-CR-00001. Plaintiff Bowling was sentenced to death on each murder and sentenced to twelve months in jail for the assault. All legitimate state and federal

---

[1] Baze v. Com*., 965 S.W.2d 817 (Ky. 1997), *cert. denied,* 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 685 (April 20, 1998).
[2] *Id*.
[3] *See* Baze and Bowling v. Rees, 217 S.W.3d 207, 209 (Ky.2006), *rehearing denied* (April 19, 2007). *See also* Baze v. Com., Ky., 23 S.W.3d 619 (2000), *rehearing denied* (Aug. 24, 2000), *cert. denied* 531 U.S. 1157, 121 S.Ct. 1109, 148 L.Ed.2d 979 (2001) (first post-conviction); Baze v. Parker*, 371 F.3d 310 (6th Cir. June 9, 2004), *rehearing en banc denied* (Aug. 27, 2004), *cert. denied* 544 U.S. 931, 125 S.Ct. 1670, 161 L.Ed.2d 495, (March 21, 2005) (federal habeas); Baze v. Com., Ky., 2006 WL 1360188 (No. 2005-SC-0415-MR, 2005-SC-0420-MR) (May 18, 2006), *rehearing denied* (Aug. 24, 2006), *cert. denied* 127 S.Ct. 1881, 167 L.Ed.2d 369 (March 26, 2007) (second post-conviction); Baze v. Com., Ky., 2006 WL 1360281 (No. 2005-SC-0889-MR) (May 18, 2006), *rehearing denied* (Aug. 24, 2006), *cert. denied* 127 S.Ct. 2034, 167 L.Ed.2d 773 (April 16, 2007) (third post-conviction).

2

means for challenging his conviction and the propriety of his death sentence have been exhausted.[4]

Lethal injection was adopted as the primary method of execution in Kentucky during the 1998 Regular Session of the Kentucky General Assembly.[5] On August 8, 2004, Plaintiffs Ralph Baze and Thomas Bowling filed a Complaint for Declaratory Judgment and Injunctive Relief in <u>Ralph Baze and Thomas C. Bowling v. Jonathan D. Rees, et al</u>, Civil Action No. 04-1094 (Franklin Cir.) (hereinafter referred to as the "<u>Baze v. Rees</u>" case).[6] Following a seven-day bench trial, the Franklin Circuit Court entered judgment in favor of the Defendants and found that Kentucky's execution protocol, including the drugs utilized under the protocol, did not violate the Plaintiffs' rights under either the Kentucky Constitution or the United States Constitution.[7] In a published opinion issued November 22, 2006, the Supreme Court of Kentucky unanimously affirmed the Franklin Circuit Court's judgment.[8] On April 16, 2008, the Supreme Court of the United States issued a written opinion affirming the trial court's judgment.[9]

In the <u>Baze v. Rees</u> case, Plaintiffs Ralph Baze and Thomas Bowling challenged the lethal injection protocol adopted by the Kentucky Department Corrections ("KDOC") based, in significant part, on the drugs used to carry out lethal injection under the protocol, and sought declaratory and injunctive relief to prohibit KDOC from executing the Plaintiffs by lethal

---

[4] *See* <u>Baze et al. v. Rees, et al.,</u> 217 S.W.3d 207, 209 (Ky.2006), *rehearing denied* (April 19, 2007).
[5] 1998 Kentucky Laws Ch. 220 (H.B. 27), effective March 31, 1998.
[6] A copy of the Complaint in <u>Baze v. Rees</u> is attached hereto and incorporated herein as Exhibit 1.
[7] A copy of the Findings of Fact and Conclusions of Law entered by Judge Roger Crittenden on July 8, 2005 in <u>Baze v. Rees</u> is attached hereto and incorporated herein as Exhibit 2. *See* Exhibit 2 at p. 10, ¶4 ("Moreover, the fact that other drugs are available that may further assure that the condemned feels no pain, this Court may not require the legislature (or in this case, the Executive Branch) to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane.").
[8] <u>Baze et al. v. Rees, et al.,</u> 217 S.W.2d 207 (Ky.2006), *rehearing denied* (April 19, 2007).

injection procedures utilizing sodium thiopental or pancuronium bromide (Pavulon), as provided for in Kentucky's lethal injection protocol.[10]

During the course of the *Baze v. Rees* case, the Plaintiffs Ralph Baze and Thomas Bowling contended that sodium thiopental and pancuronium bromide were not safe or effective for use in conducting executions, as provided under Kentucky's lethal injection protocol.[11] The Plaintiffs also attacked the lack of involvement of physicians or other medical professionals deemed by Plaintiffs as being qualified to carry out executions.[12] Furthermore, the subject matter covered by the Plaintiffs' claims in *Baze v. Rees* broadly embraced "the methods for obtaining, storing, mixing, and appropriately labeling the drugs."[13] In fact, during the course of discovery in *Baze v. Rees* case, the Plaintiffs even conducted and obtained discovery of the procedures utilized by the Department of Corrections to acquire the lethal injection drugs utilized under Kentucky's lethal injection protocol. In particular, during the Plaintiffs' November 4, 2004 discovery deposition in *Baze v. Rees* of the KDOC Medical Director, Defendant Scott Haas, M.D, the following testimony was elicited by Plaintiffs:

> Q:  OK, as Chief Medical Officer in the Department of Corrections, can you tell me how the Department of Corrections goes about buying these drugs?  Is it a centralized process or decentralized or what?

---

[9] *Baze et al.  v. Rees, et al.,* 128 S.Ct. 1520,169 L.Ed.2d 605 (2008).

[10] Specifically, Paragraph 199 of the Plaintiffs' Complaint in *Baze v. Rees* sought entry of "a declaratory judgment that the usage of sodium thiopental violates both the Kentucky Constitution and the United States Constitution. " Exhibit 1 at ¶199.  The Plaintiffs also requested injunctive relief barring the Defendants from executing Plaintiffs under a protocol which they alleged "utilizes an inadequate anesthetic (i.e. sodium thiopental)." *Id*.  Paragraph 200 of the Complaint in *Baze v. Rees* sought entry of "a declaratory judgment that the usage of Pavulon violates both the Kentucky Constitution and the United States Constitution. " Exhibit 1 at ¶200. In addition, the Plaintiffs sought injunctive relief barring the Defendants from executing Plaintiffs under a protocol "that utilizes Pavulon." *Id*.

[11] *See, e.g.,* Exhibit 1 *at* ¶¶ 199-200.

[12] *See, e.g.,* Exhibit 1 at ¶105(e) and (m),alleging that Kentucky's lethal injection protocol present a 'grave' risk of pain and suffering, "because the procedures and protocols designed by Defendants . . . (e) use 'volunteers' to carry out the execution rather than highly trained individuals with proper credentials; [. . .]  (m) do not establish the minimum qualifications and expertise required for the person who will determine the concentration and dosage of each drug; [. . . ] and, (t) only permit doctors to pronounce death and sign the death certificate."

[13] *See* Exhibit 1 at ¶105(l).

A: We have a pharmacy contract that provides all the pharmaceutical needs of (*sic*) Department of Corrections.

Q: OK. And that company is

A: Secure Pharmacy Plus.

Q: And they're at Franklin, Tennessee?

A: I believe so.

Q: So is each institution responsible for purchasing their own drugs?

A: The institutions don't purchase drugs per se, they're ordered by the physician.

Q: OK.

A: And then the bill is sent through the Central Office.

Q: Do you know how the drugs that are to be used in a lethal injection would be procured by the Department?

A: Specifically, no, I know it's not through the routine process of using Secure Pharmacy.

Q: Are you aware of any efforts made by the Department to obtain a license that's not tied to a specific doctor's name?

A: Yes.

Q: OK. Can you tell me about that?

A: There are forms by the drug enforcement agency in [inaudible] and registration [inaudible] is either a 222 form or a 224 form

Q: That's through the DEA?

A: Yes.

Q: OK

A: And those forms are utilized by a non-physician entity[,] a university   research lab, central correctional institutions [inaudible]

5

medications for lethal injection and the way that DEA controlled medication that will be used for non-medical purposes.

Q: OK. Are you aware of when the Department of Corrections obtains such a license?

A: No.

Q: When did you first feel that they were trying to obtain such a license?

A: I believe it was about a month ago.

Q: OK. Do you know why they're, why they're trying or why they may have obtained such a license?

A: I assume to obtain the drugs.

Q: Why might they want to obtain those drugs without a doctors (*sic*) being associated with it?

A: Doctors do not participate in executions.

Deposition of Scott Haas, M.D. in *Baze v. Rees*, Civil Action 04-CI-1094 (Franklin Cir.).[14]  The November 4, 2004 deposition of Dr. Haas in the *Baze v. Rees* case also contained the following testimony:

Q: Is it your opinion that this is the proper way

A: What is proper?

Q: to get this license[,] that is, institutional license, this DEA form, I'm sorry I forgot the number, 204, 205, uh, as opposed to a license that is linked to a physician?

A: Do I believe that's the appropriate way to do it?

---

[14] Copies of the cover page and pages 26-29 of the transcript of the November 4, 2004 deposition of Scott Haas, M.D. taken during discovery in the *Baze v. Rees* case are attached hereto and incorporated herein as Exhibit 3.

      Q:  Yes.

      A:  Yes.

Deposition of Scott Haas, M.D. from <u>Baze v. Rees</u>, Civil Action 04-CI-1094 (Franklin Cir.).[15] Thus, even the minute details of KDOC's method for obtaining lethal injection drugs were the subject matter of discovery in <u>Baze v. Rees</u>.

      On May 22, 2007, Plaintiffs Ralph Baze and Thomas Bowling filed their Complaint for Declaratory and Injunctive Relief [Docket #5] in the present action.[16] On June 18, 2007, the Plaintiffs filed their First Amended Complaint for Declaratory Judgment [Docket #12] in the present action. In the case *sub judice,* the subject matter of the Plaintiff's action once again involves Kentucky's administration and use of sodium thiopental and pancuronium bromide to carry out executions, as provided for in the State's lethal injection protocol. As stated in the Plaintiffs' First Amended Complaint [Docket # 12],

> Plaintiffs seek a declaratory judgment that Defendants (*sic*) means for obtaining and administering the lethal injection chemicals violate the Federal Controlled Substances Act and the Federal Food, Drug and Cosmetic Act.

First Amended Complaint [Docket # 12] at ¶15. The First Amended Complaint's Prayer For Relief makes it even clearer that the subject matter of the case *sub judice* is the administration of the lethal injection chemicals utilized under Kentucky's lethal injection protocol. Specifically, the Prayer For Relief states:

      VIII.      PRAYER FOR RELIEF

---

[16] In addition, Jeffrey Leonard was initially a plaintiff in the case *sub judice,* but he is motion to withdraw was granted by the Court after his death sentence was commuted to life in prison. Order entered March 20, 2008 [Docket #42].

7

> 60. Plaintiffs request a declaratory judgment that carrying out a lethal injection using sodium thiopental when the thiopental is neither administered by a doctor licensed to administer it nor prescribed by a doctor licensed to do so violates the Federal Controlled Substances Act.
>
> 61. Plaintiffs request a declaratory judgment that carrying out a lethal injection with chemicals obtained without a prescription from a licensed medical practitioner violates the Federal Controlled Substances Act.
>
> 63. Plaintiffs request a declaratory judgment that carrying out a lethal injection with chemicals that have not been approved by the FDA for use in lethal injection violates the Federal Food, Drug and Cosmetic Act.

First Amended Complaint [Docket #12] at ¶¶60-62.

The Plaintiffs' original Complaint in the case *sub judice* also sought to enjoin the Defendants from carrying out the Plaintiffs' executions using sodium thiopental and potassium chloride as provided for under Kentucky's lethal injection protocol, stating as follows:

> 60. Plaintiffs request a preliminary injunction barring Defendants from injecting them with sodium thiopental unless it is done by a doctor licensed to administer sodium thiopental or as a result of a prescription issued by a doctor licensed to prescribe sodium thiopental.
>
> \* \* \*
>
> 62. Plaintiffs request a preliminary injunction barring Defendants from injecting them with chemicals obtained without a prescription from a licensed medical practitioner.
>
> \* \* \*
>
> 64. Plaintiffs request a preliminary injunction barring Defendants from injecting them with chemicals that have not been approved by the FDA for use in lethal injections.

Complaint [Docket # 5] at ¶¶ 60, 62, 64.

The Plaintiffs' First Amended Complaint [Docket #12] does not include an express demand for injunctive relief in its Prayer For Relief section, but it continues to allege that the Court has jurisdiction pursuant to 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §2201

(Declaratory Judgment Act), 28 U.S.C. §2201 (further relief), 21 U.S.C. §332 (enjoining FDCA violations); and Fed.R.Civ.P. 65 (Injunctions) to enjoin the Defendants from executing him using sodium thiopental and pancuronium bromide, as provided for under Kentucky's lethal injection protocol.

## II.     ARGUMENT

The Defendants do not dispute the statement in the Plaintiffs' Brief indicating that the claim preclusive effect of a state court judgment on a subsequent federal court action must be determined by applying the claim preclusion law of the state where the prior state court judgment was entered. However, the Defendants fundamentally dispute the accuracy of the Plaintiffs' statement of the law in Kentucky on the issues of res judicata and claim preclusion.

In their Brief, the Plaintiffs contend that "unless Kentucky law required a claim to be raised as part of a prior lawsuit, claim preclusion does not bar court from deciding the claim in a future law suit."[17] The Plaintiffs suggest that claim preclusion should not apply unless a party was under some affirmative legal requirement to raise the claim in a prior law suit, such as a rule of civil procedure making the filing of cross-claims compulsory instead of being permissive.[18] This is not an accurate statement of the law of res judicata and claim preclusion in Kentucky.

Kentucky courts follow a broad application of res judicata and claim preclusion. *Bradley v. Fannin*, 390 F. Supp.2d 625, 629 (E.D.Ky. 2005). "Under Kentucky law, res judicata, or claim preclusion, may be used to preclude entire claims that were brought or should have been brought in a prior action . . . .' " *Donovan v. Thames*, 105 F.3d 291, 295 (6th Cir.1997) (quoting *City of Covington v. Board of Trustees of Policemen's and Firefighters' Retirement Fund*, 903

---

[17] Plaintiff's Brief [Docket #44] at 5.

S.W.2d 517, 521 (Ky.1995) (internal quotations deleted). Thus, in Kentucky, claim preclusion is neither limited to claims required by law to be asserted in a prior action, nor to claims actually asserted and decided in a prior action. To the contrary, the bar of claim preclusion applies "*to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.*" Combs v. Prestonsburg Water Co., 260 Ky. 169, 84 S.W.2d 15, 18 (Ky.1935), *quoting* Locke v. Com., 24 Ky.L.Rptr. 654, 69 S.W. 763, 764 (Ky. 1902) (internal quotations deleted). As held by the Supreme Court of Kentucky in *Combs*, the final judgment in a prior action:

> is conclusive upon the parties and their privies, not only upon the particular subject matter, but as to all future litigation between the same parties or their privies touching the same subject matter.

Combs., 84 S.W.2d at 18. The purpose of the doctrine is to prevent parties from proceeding piecemeal in multiple actions relating to the same subject matter. As stated in Overstreet v. Greenwell, 441 S.W.2d 443 (Ky.1969),

> If a party is brought into a case and has a fair legal opportunity to present and enforce any claim he may have in relation to the subject-matter, he must avail himself of it, and, whether an original party or an intervener, he must present his whole case, extending his claim so as to embrace everything which properly constitutes a part of his cause of action or defense.

Overstreet v. Greenwell, 441 S.W.2d at 447, *quoting* Deering v. Stites, 257 Ky. 403, 78 S.W.2d 46 (Ky., 1934).

In the present case, all conditions are satisfied for application of res judicata. The case *sub judice* and the prior Baze v. Rees action involve the same parties or their successors.[19] The judgment of the Franklin Circuit Court in Baze v. Rees is a final judgment decided on the merits

---

[18] *Id*.

after a seven-day bench trial in the matter.[20] Furthermore, the two actions clearly involve or relate to a common subject matter and properly could have been litigated in the prior action with the exercise of reasonable diligence by the Plaintiffs. *See, e.g., Overstreet*, 441 S.W.2d at 447; *Combs.,* 84 S.W.2d at18.

As stated previously, both the current action and the prior *Baze v. Rees* action relate to Kentucky's use of sodium thiopental and pancuronium bromide (Pavulon) to carry out executions by lethal injection. [21] In each action, the Plaintiffs sought declaratory relief to prohibit the Defendants from executing them under the same Kentucky lethal injection protocol. In each action, the Plaintiffs seek to attack Kentucky's lethal injection protocol based on the lack of involvement of physicians and other medical professionals deemed by Plaintiffs as being necessary for the carrying out of lawful executions.[22] Both actions question Kentucky's "methods for obtaining . . . . the drugs."[23] Furthermore, the Plaintiffs' November 4, 2004 discovery deposition of Defendant Scott Haas, M.D. in *Baze v. Rees*, clearly establishes that the Plaintiffs could have pursued their claims involving the Federal Controlled Substances Act during the *Baze v. Rees* case with the exercise of reasonable diligence.[24]

The Plaintiffs mistakenly cite the case of *Buis v. Elliott*, 142 S.W.3d 137 (Ky. 2004), as authority for their unique contention that claim preclusion in Kentucky is limited to claims

---

[19] *See Combs v. Prestonsburg Water Co.,* 260 Ky. 169, 84 S.W.2d 15 (Ky. 1935), *Clay v. Clay*, Ky., 199 Ky. 4, 250 S.W. 829, 832 (Ky. 1923).

[20] *See Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725 (1941) (judgment is final for purposes of applying *res judicata* notwithstanding the fact that an appeal is pending).

[21] *See, e.g.,* Exhibit 1 at ¶¶ 199-200; First Amended Complaint [Docket #12] at ¶¶ 56-62.

[22] *See, e.g.,* Exhibit 1 at ¶105(e) and (m),alleging that Kentucky's lethal injection protocol present a 'grave' risk of pain and suffering, "because the procedures and protocols designed by Defendants . . . (e) use 'volunteers' to carry out the execution rather than highly trained individuals with proper credentials; [. . .] (m) do not establish the minimum qualifications and expertise required for the person who will determine the concentration and dosage of each drug; [. . . ] and, (t) only permit doctors to pronounce death and sign the death certificate."

[23] *See* Exhibit 1 at ¶105(l).

[24] *See* Exhibit 3.

required by law to be asserted in a prior action. The reason that claim preclusion did not apply in *Buis*, was because the Supreme Court of Kentucky held that a prior default judgment against a vendor of land and a subsequent purchaser did not amount to an adjudication on the merits as to the subsequent purchaser's cross-claims against the vendor.[25]

The end result is that Plaintiff's present action presents a classic example of a subsequent federal court action barred by the judgment in a prior state court judgment under the doctrines of res judicata and claim preclusion.

The remainder of the Plaintiffs' Brief sets forth variants of their argument that the prior *Baze v. Rees* case somehow did not afford them an opportunity to raise or litigate the claims they now attempt to raise in the present federal court action. Upon closer inspection, these arguments lack any basis in law or fact.

The Plaintiffs go to great lengths to argue that Federal Controlled Substances Act and the Federal Food, Drug and Cosmetic Act grant exclusive jurisdiction to the federal courts to hear actions to enforce these statutes.[26] However, as stated in the Court's Order to Show Cause entered June 7, 2007 [Docket #9], and as conceded by the Plaintiffs in their Response to June 7, 2007 Show Cause Order filed July 9, 2007 [Docket #16], the Federal Controlled Substances Act

---

[25] *Buis v. Elliott*, 142 S.W.3d 137 at 139, 141. The *Buis* decision was based on existing precedent specifically applicable to cross-claims , under which "a judgment against codefendants is not conclusive as between themselves with respect to their rights and liabilities toward each other unless an issue was made between them or the parties in the second action were adversary parties in the first action." *Id*. at 141, quoting Brown Hotel Co. v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165, 168 (1949). The trial court in the prior action had denied the subsequent purchaser's motion for leave to file a cross-claim against the vendor, meaning that the subsequent purchaser was merely a co-defendant with the land vendor in the prior action, not an "adversary party." *Id*. Denial of the motion to file the cross-claim in the first action also meant that the subsequent purchaser in *Buis* literally "did not have the opportunity to actually litigate issue" in the prior action. *Id*. at 140-141. The lone reasons the *Buis* opinion makes mention that "cross-claims in Kentucky are merely permissive and not compulsory" is to explain why the trial court in the prior action was free to deny the subsequent purchaser's motion for leave to file the cross-claim, and that the subsequent purchaser's failure to appeal the prior court's denial of the motion to cross-claim did not preclude the party from filing the subsequent action against the land vendor. *Id*. at 141.

[26] Plaintiff's Brief [Docket #44] at 7-8

and the Federal Food, Drug and Cosmetic Act do not contain any express or implied private cause or action or right of enforcement. In the Defendants' Reply Memorandum to the Plaintiffs' Response to the Court's Show Cause Order filed August 15, 2007 [Docket #27], the Defendants persuasively argue that Plaintiffs lack any independent basis of federal subject matter jurisdiction, and that the present action must be dismissed as a result.

      The Defendants will refrain from re-briefing the jurisdictional issues addressed in the Court's Order to Show Cause and the subsequent briefs and memoranda of the parties on the jurisdictional issue. The germane point is that since the Federal Controlled Substances Act and the Federal Food, Drug and Cosmetic Act do not provide a basis of subject matter jurisdiction for the federal claims they are attempting to state in the present action, it does not really matter whether or not these acts provide the federal district courts with exclusive jurisdiction over the types of official enforcement actions actually created under the CSA and the FDCA.

      If and when the Plaintiffs ever succeed in identifying a valid independent basis of jurisdiction for the claims they attempt to set forth in the present action, the Plaintiffs would then have to establish that whatever federal statute they rely on for the alleged independent basis of federal jurisdiction grants exclusive jurisdiction to the federal district courts for actions brought under authority of such a statute, if such statute is ever demonstrated to exist. Since the Plaintiffs have failed to accomplish this, they have not established that they would have been unable to file in the Kentucky courts whatever alleged federal law claims they have been attempting to set forth in the present action.

      The Plaintiffs also contend that the courts of Kentucky somehow lack subject matter jurisdiction to hear federal causes of action.[27]  However, Kentucky's circuit courts are courts of

---

[27] Plaintiff's Brief [Docket #44] at 6-7.

general jurisdiction which may hear federal actions that are not within the exclusive jurisdiction of the federal courts. The Plaintiffs were thus free to bring whatever federal cause of action they now claim to have in the prior Franklin Circuit Court action in *Baze v. Rees*. *See, e.g., Bradley v. Fannin*, 390 F. Supp.2d 625, 629 (E.D.Ky. 2005) (stating that §1983 action could have been brought in prior state court action).

Finally, the Plaintiffs contend that they did not learn how the Defendants obtained the drugs used to carry out lethal injections until discovery in *Baze v. Rees*.[28] The Plaintiffs implicitly admit that they could have brought their claim under the Federal Controlled Substances Act at that time with the exercise of due diligence, but apparently contend that claim preclusion does not apply because no procedural rule in the Kentucky Rules of Civil Procedure made it mandatory for the Plaintiffs to amend their Complaint in the *Baze v. Rees* case to include the claim.

Once again, the Plaintiff's contention is grounded in their erroneous belief that claim preclusion in Kentucky is somehow limited to claims explicitly required by law to be asserted in a prior action. As stated in detail previously, the bar of claim preclusion in Kentucky applies broadly "*to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.*" *Combs v. Prestonsburg Water Co.,* 260 Ky. 169, 84 S.W.2d 15, 18 (Ky.1935), *quoting Locke v. Com.*, 24 Ky.L.Rptr. 654, 69 S.W. 763, 764 (Ky. 1902) (emphasis added) (internal quotations deleted). The Plaintiffs' contentions that the claim did not accrue until discovery in *Baze v. Rees* and that amendment of their Complaint in the prior action might have been necessary do not render claim

---

[28] Plaintiff's Brief at 9. *See* Exhibit 3 (Excerpt from Deposition of Scott Haas, M.D. in *Baze v. Rees*).

14

preclusion any less applicable. *See* Bradley v. Fannin, 390 F. Supp.2d 625, 629 (E.D.Ky. 2005).

**III.    CONCLUSION:**

For all the forgoing reasons, the Defendants respectfully ask the Court to dismiss the above-styled action on grounds of res judicata and claim preclusion.

Respectfully submitted,

*/s/ John C. Cummings*

---

John C. Cummings
Justice & Public Safety Cabinet
Office of Legal Services
125 Holmes Street
Frankfort, Kentucky 40601
(502) 564-3279
(502) 564-6686 (fax)
COUNSEL FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2008, I electronically filed the foregoing document with the Court by using the CM/ECF system.  I further certify that a true and correct copy of the foregoing document has been served by electronic notice to the following: davembarron@yahoo.com and john.palombi@ky.gov.

*/s/ John C. Cummings*

---

John C. Cummings